IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOODWORKS USA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 1020 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| FOODWORKS OF ARLINGTON ) | |
| HEIGHTS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On June 5, 2012, Defendant filed a Motion for Involuntary Dismissal for Failure to Prosecute, for Sanctions, and Other Relief. Defendant requests that the Court: (1) involuntarily dismiss Plaintiff's complaint with prejudice pursuant to Rule 41(b) for failure to prosecute, failure to comply with the Federal Rules of Civil Procedure, and failure to comply with Court orders; (2) sanction Plaintiff and its counsel for their repeated failures to respond to written discovery without substantial justification, and grant as a sanction any and all relief as Rule 37(b) and (d) permit, including awarding attorneys' fees; and (3) granting any and all other relief as the Court sees fit or that justice requires. Plaintiff has not filed a response. For the reasons stated below, the Motion is granted in part and denied in part.

## I. BACKGROUND[1]

Defendant operates a Mexican-themed restaurant in Arlington Heights, Illinois, known as the Fuego Mexican Grill and Margarita Bar. Plaintiff's Complaint and Defendant's Counterclaim deal with intellectual property issues relative to the name of the restaurant and the trade dress used at the restaurant. Plaintiff's Complaint seeks relief under the Lanham Act for trademark infringement and dilution for what is identified as Plaintiff's registered, stylized servicemark. Plaintiff also seeks relief under the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/2, and for common law breach of contract. Defendant's counterclaim seeks a declaratory judgment that Defendant is the owner of the trademark and the trade dress. Defendant also seeks relief under the Lanham Act for trade dress infringement and dilution. Defendant also seeks to cancel the registration of the trademark obtained by Plaintiff, damages for fraudulent or false representation under the Lanham Act, and relief for common law conversion. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

On March 21, 2011, Plaintiff's counsel filed a Motion to Withdraw as attorney for Plaintiff. (Doc. 39.) On April 6, 2011, the Court granted the motion and continued the matter so that Plaintiff could obtain new counsel. (Docs. 41, 44.) On May 18, 2011, Ayad Nahlawi, Plaintiff's principal owner, personally appeared and advised the Court that Plaintiff had not yet obtained new counsel. (Doc. 43.) Nahlawi was given until July 13, 2011, to retain new counsel and admonished that if he failed to

---

[1] As noted, Plaintiff has not responded to this Motion. Accordingly, for purposes of this Motion, the Court accepts as true the facts asserted by Defendant.

do so his claims could be subject to involuntary dismissal and Defendant's claims given a default judgment. (*Id.*)

On July 12, 2011, Defendant filed a Motion to Dismiss for Want of Prosecution and a Motion for Default Judgment. (Docs. 46, 47.) On July 13, 2011, Nahlawi again appeared without counsel. (Doc. 49.) Over Defendant's objections, both pending motions were entered and continued until August 9, 2011. (*Id.*) On August 8, 2011, over four months after Plaintiff's counsel moved to withdraw, new counsel sought leave to appear on behalf of Defendant, which was granted. (Docs. 51, 53.) In light of Plaintiff's newly retained counsel, the Court struck Defendants' motion to dismiss and motion for default judgment. (Doc. 55.)

After settlement discussions and a November 9, 2011 settlement conference were unsuccessful, the Court directed the parties to begin discovery and provide the Court with an agreed discovery schedule within 14 days. (Docs. 54, 64.) Later that same day, Defendant sent Plaintiff's new counsel the Interrogatories and Requests to Produce that had been previously served on Plaintiff's prior counsel almost seven months prior. (Mot. ¶ 8, Exs. A–D.) On December 6, 2011, the Court entered a discovery schedule: all written discovery to be completed by February 29, 2012, and oral discovery by June 1, 2012. (Doc. 65.)

At the January 26, 2012 status hearing, Plaintiff's counsel assured the Court that his client's discovery requests would be forthcoming as well as its responses to Defendant's discovery requests. (Doc. 66; Mot. ¶ 10.) The Court advised the parties that if Plaintiff did not timely respond to Defendant's discovery requests, Defendant

was granted leave to file a motion to compel pursuant to Rule 37. (Mot. ¶ 10.) When Plaintiff had failed to either respond to the discovery requests or propound discovery by February 27, 2012, Defendant filed its Rule 37 Motion to Compel. (Doc. 67.) On March, 5, 2012, Plaintiff filed its response to the motion to compel, asserting that it could not respond to the discovery requests because counsel was busy handling other matters for Plaintiff. (Doc. 72.) Plaintiff also represented that "outstanding discovery will be forthcoming within ten (10) to fourteen (14) days, if not sooner." (*Id.* ¶ 5.) Plaintiff also assured the Court that it was "finalizing its own written discovery requests" to serve on Defendant within the same 10–14 day period. (*Id.* ¶ 6.) However, the 14-day period elapsed with no responses to written discovery produced or discovery requests issued. Instead, at a status hearing on April 3, 2012, Plaintiff requested an additional seven days to comply. (Doc. 78.)

Plaintiff still failed to comply with Court-imposed deadlines. On April 10, 2012, Plaintiff requested additional time, which the Court granted to and including April 17, 2012. (Docs. 79, 81.) At a status hearing on April 24, 2012, Plaintiff requested another extension. (Doc. 82.) The Court granted Plaintiff until April 30, 2012, at 5:00 p.m. to respond to Defendant's written discovery and until May 7, 2012, at 5:00 p.m. to serve Defendant with Plaintiff's discovery requests. (*Id.*) The Court warned Plaintiff that "absent exigent circumstances, no further extensions will be granted." (*Id.*)

Shortly after 5:00 p.m. on April 30, 2012, Plaintiff's counsel sent two email messages to Defendant's counsel. (Mot. ¶ 20.) The first email contained 13 files totaling

13 pages that were purportedly responsive to Defendant's document request. (*Id.* Ex. F.) The email indicated that other responsive documents would be forthcoming. (*Id.*) The second email contained answers to Defendant's interrogatories. (*Id.* Ex. G.) On May 7, 2012, Plaintiff emailed its discovery requests to Defendant, but no further documents were produced. (*Id.* ¶ 22, Ex. H.) Finally, on May 11, 2012, eleven days beyond the deadline that was not to be missed absent exigent circumstances, Plaintiff served Defendant with a CD containing documents in response to Defendant's document request. (*Id.* ¶ 23, Ex. I.)

However, at the May 15, 2012 status hearing, Defendant notified the Court of the many deficiencies in Plaintiff's production. (Mot. ¶ 23.) After reviewing the deficiencies with the parties, the Court granted Defendant until June 5, 2012 to file the instant motion to dismiss for failure to prosecute. (Doc. 84.) Plaintiff's was given until June 26, 2012, to file a response. (*Id.*) In its order setting the briefing schedule, the Court warned Plaintiff that "the failure to file a response, or a failure to file it within the deadline, may be deemed consent to the granting of the motion." (*Id.*) On June 29, 2012, the Court granted Plaintiff's request for additional time to respond to the Motion and extended the due date until July 17, 2012. (Docs. 87, 89.) To date, however, no response has been filed. (*See* Doc. 91 (Court's July 25, 2012 Order noting that Plaintiff never filed its response).)

## II. DISCUSSION

It is well established that federal district courts have the authority "to dismiss a plaintiff's action with prejudice because of his failure to prosecute." *Link v. Wabash*

*R.R.*, 370 U.S. 626, 629 (1962). The authority has been expressly recognized in Fed. R. Civ. P. 41(b), which provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits.

"Such a dismissal is one of the tools available to district courts 'to achieve the orderly and expeditious disposition of cases.'" *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (per curiam) (quoting *Link*, 370 U.S. at 630–31).

Nevertheless, "dismissal for failure to prosecute is an extraordinarily harsh sanction, to which courts should resort only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998) (citations omitted). Thus, in the Seventh Circuit, district courts must "provide 'due warning' to plaintiff's counsel before dismissing a suit for want of prosecution in most cases." *Williams*, 155 F.3d at 857. "'Due warning' need not be repeated warnings and need not be formalized in a rule to show cause. A judge is not obliged to treat lawyers like children. But there should be an explicit warning in every case." *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993). In sum, "while the power to sanction via dismissal is one which should be exercised with great care, it is essential to a court's ability to efficiently manage its caseload." *Lewis v. Sch. Dist. # 70*, 648 F.3d 484, 488 (7th Cir. 2011) (citation omitted).

The Seventh Circuit has "set forth numerous factors that district courts . . . should take into consideration when deciding whether to dismiss a case for failure

to prosecute." *Williams*, 155 F.3d at 857. "Ideally, the district court should consider the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel, the effect of those failures on the judge's calendar and time, the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents." *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003). Keeping these factors in mind, the Court now considers Defendant's motion for involuntary dismissal.

The procedural history of this case demonstrates that on numerous occasions, Plaintiff and its counsel have not respected Court-imposed deadlines. For example, after the Court granted Plaintiff's counsel's motion to withdraw in March 2011, it took Plaintiff over four months to retain new counsel. During that time, Plaintiff missed two deadlines and failed to heed the Court's warning that its claims could be subject to involuntary dismissal if it failed to timely retain new counsel.

Plaintiff also ignored many deadlines to respond to discovery and to serve its discovery on Defendant. Plaintiff was first served with discovery requests in June 2010. In November 2011, after settlement discussions were unsuccessful, these same requests were served on Plaintiff's new counsel. On January 26, 2012, the Court set a 30-day deadline to respond to discovery and to serve its own discovery. When Plaintiff failed to either respond to the discovery requests or propound dis-

covery by February 27, 2012, Defendant filed a Rule 37 Motion to Compel. On March 6, 2012, Defendant represented that it would respond to the outstanding discovery within 10 to 14 days and serve Defendant with written discovery within the same time period. However, the 14-day period elapsed with no responses to Defendant's discovery or discovery requests issued. Instead, over the next two months, Plaintiff kept ignoring deadlines, despite the Court granting several extensions.

Finally, in late April and early May 2012, Plaintiff sent two email messages and a CD of documents that were purportedly responsive to Defendant's discovery requests. However, the discovery responses were grossly deficient. While the interrogatories were responded to without objections, the responses contained few, if any, facts or details as requested. (*See* Mot. ¶¶ 27–35, Ex. G.) For example, despite filing a Complaint alleging various intellectual property violations, Plaintiff's interrogatory responses provide no information about the trademark and trade dress Defendant is alleged to have infringed. (*Id.* ¶¶ 30–33, Ex. G.) Further, Plaintiff failed to sign its answers to the interrogatories, as required under Rule 33.

Similarly, Plaintiff's "response" to the document requests is also notably deficient. First, Plaintiff never served an actual response to the requests; instead, Plaintiff's counsel merely sent an email with 13 documents attached and a CD, which consists entirely of *Defendant's* financial records. (Mot. ¶¶ 37–38, Exs. F, I.) When the Court learned of these deficiencies at the May 15, 2012 status hearing, the Court granted Defendant leave to file the instant Motion.

Even after the instant Motion was filed, Plaintiff continued to disrespect Court-imposed deadlines. Plaintiff's response to the Motion was due on June 26, 2012. (Doc. 84.) In its order setting the briefing schedule, the Court explicitly warned Plaintiff that "the failure to file a response, or a failure to file it within the deadline, may be deemed consent to the granting of the [M]otion." (*Id.*) Nevertheless, at the last moment, on June 26, Plaintiff requested additional time to respond to the Motion. (Doc. 87.) The Court granted Plaintiff's request and extended the due date until July 17, 2012. (Doc. 89.) However, the due date has passed with no response or request for additional time. *See Lopez v. Catholic Charities of the Archdiocese of N.Y.*, No. 00 Civ. 1247, 2001 WL 50896, at *4 (S.D.N.Y. Jan. 22, 2001) (ruling that Plaintiff's failure to respond to motion to dismiss for failure to prosecute favors dismissal); *Betancourt v. Toledo*, 199 F.R.D. 447, 447 (D. P.R. 2001) (same).

This chronology makes clear that Plaintiff has never had a serious intention to prosecute this case. Further, Plaintiff has wasted the Court's time and clogged the Court's calendar. *See Sandee Mfg. Co. v. Rohm & Haas Co.*, 298 F.2d 41, 43 (7th Cir. 1962) (the importance of the district court maintaining control of its calendar is an important factor when considering dismissal for failure to prosecute). The Court has conducted numerous status hearings only to listen to Plaintiff's excuses for why it could not meet the Court's deadlines and schedules. *See Lewis*, 648 F.3d at 488 ("While the power to sanction via dismissal is one which should be exercised with great care, it is 'essential' to a court's ability to efficiently manage its caseload."). Defendant has also been prejudiced by Plaintiff's dilatory conduct. Defendant has

had to file several motions and attend many status hearings in an unsuccessful effort to get Plaintiff to respond to discovery requests that were first served *over two years ago*. Moreover, the merits of Plaintiff's case are seriously in doubt. Nahlawi, Plaintiff's principal owner and Defendant's former manager, surely must be in possession and control of relevant information relating to the trademark and trade dress claims that form the basis for Plaintiff's lawsuit. Yet, after numerous delays and missed deadlines, Plaintiff has produced little, if any, information that supports its claims.

Finally, Plaintiff has received "due warning" that its case was subject to dismissal. Defendant has filed a motion to dismiss for failure to prosecute on two separate occasions. *See Lopez*, 2001 WL 50896, at *4 (noting that a Rule 41(b) motion places the plaintiff on notice of possible dismissal for failure to prosecute). Moreover, on several occasions, the Court warned both Plaintiff and its counsel in open court and in orders that further delays could result in sanctions, including dismissal of Plaintiff's lawsuit. *See Aura Lamp*, 325 F.3d at 908 (finding plaintiff on due notice by court's warnings at status conference).

In sum, the balance of factors governing dismissal under Rule 41(b) clearly favor dismissal for failure to prosecute. Accordingly, it is not necessary for the Court to consider Defendant's request for alternative relief.[2] Defendant shall submit a motion for attorneys' fees within 14 days of the entry of this order.

---

[2] Further, while Defendant makes a request that the Court enter a default judgment against Plaintiff on Defendant's counterclaim, Defendant provides no legal or factual argument in support of its burden under Rule 37 that Plaintiff displayed wilfulness, bad faith or fault. *See Aura Lamp*, 325 F.3d at 909.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Involuntary Dismissal for Failure to Prosecute, for Sanctions, and Other Relief [Doc. 85] is **GRANTED IN PART AND DENIED IN PART**. The complaint is **DISMISSED WITH PREJUDICE**. Defendant's Motion to Compel [Doc. 67] and Plaintiff's Motion to Extend Deadline for Completion of Written Discovery [Doc. 70] are **DENIED AS MOOT**.

E N T E R:

Dated: August 14, 2012

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge