IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOODWORKS USA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 10-CV-1020 |
| v. ) | |
| ) | |
| FOODWORKS OF ARLINGTON HEIGHTS, LLC,) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION FOR JUDGMENT ON DAMAGES

Defendant/Counter-Plaintiff, FOODWORKS OF ARLINGTON HEIGHTS, LLC, by its attorneys, DEWALD LAW GROUP PC, and for its Motion for Judgment on Damages, states:

## INTRODUCTION

On July 1, 2013, the Court granted Defendant/Counter-Plaintiff, Foodworks of Arlington Heights, LLC's ("FWAH"), Motion for Default Judgment, in part, finding that a default judgment on liability on FWAH's Counterclaim in favor of FWAH was an appropriate sanction for Plaintiff/Counter-Defendant, Foodworks USA, Inc.'s ("FUSA") conduct. (Dkt. 152 at p. 22). While liability has been established in favor of FWAH, the Court has sought additional information from FWAH relative to the issue of damages, and the instant Motion for Judgment on Damages is being brought for that purpose.

## STANDARD OF REVIEW

A default judgment establishes, as a matter of law, that FUSA is liable to FWAH on each cause of action alleged in the Counterclaim. *e360 Insight v. The Spamhouse Project*, 500 F.3d 594, 602 (7th Cir. 2007). "Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Nevertheless, if one party's conduct

makes it difficult for the other party to prove the precise extent of its damages, the Court will give broad latitude in quantifying damages. *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011).

## COUNT I-DECLARATORY JUDGMENT

Count I seeks a declaratory judgment regarding the Fuego Logo and its derivatives, as well as the common law trademark rights in the name FUEGO MEXICAN GRILL & MARGARITA BAR, (collectively, and hereinafter the "Fuego Marks"). FUSA licensed the Fuego Marks to other entities, including an entity called Foodworks 2047, LLC, which operated an identical Mexican-themed restaurant named FUEGO MEXICAN GRILL & MARGARITA BAR in Chicago. (Doc. 1 at ¶ 54). FWAH would seek the following relief for Count I, none of which would require the production of evidence outside of the allegations of the Counterclaim:

(1) declaring, pursuant to 28 U.S.C. § 2201, FWAH as the rightful and sole owner of the Fuego Marks;

(2) declaring, pursuant to 28 U.S.C. § 2201, FUSA as having no ownership rights in the Fuego Marks;

(3) declaring, pursuant to 28 U.S.C. § 2201, the License Agreement between FUSA and FWAH void *ab initio* and held for naught;

(4) declaring any and all other licenses executed between FUSA and any third-party regarding any or all of the Fuego Marks void *ab initio* and held for naught; and

(5) temporarily, preliminarily, and permanently enjoining FUSA and all individuals or entities acting in concert with FUSA from using the Fuego Marks in any manner.

## COUNT II—DECLARATORY JUDGMENT

Count II seeks a declaratory judgment regarding the trade dress found at FWAH's

restaurant ("Fuego Dress"). In addition to the license of the Fuego Marks, FUSA licensed the trade dress to other entities, including Foodworks 2047, LLC. (Doc. 1 at ¶ 54). FWAH would seek the following relief for Count II, which, as with Count I, would not require the production of any evidence outside of the allegations of the Counterclaim:

(1) declaring, pursuant to 28 U.S.C. § 2201, FWAH as the rightful and sole owner of the Fuego Dress;

(2) declaring, pursuant to 28 U.S.C. § 2201, FUSA as having no ownership rights in the Fuego Dress;

(3) declaring, pursuant to 28 U.S.C. § 2201, any and all other licenses executed between FUSA and any third-party regarding the Fuego Dress void *ab initio* and held for naught;

(4) temporarily, preliminarily, and permanently enjoining FUSA and all individuals or entities acting in concert with FUSA from using the Fuego Dress in any manner; and

## COUNT III—TRADEMARK INFRINGEMENT

Count III seeks damages for trademark infringement of the Fuego Marks. Section 35 of the Lanham Act provides that a prevailing party may recover:

(1) defendant's profits,

(2) any damages sustained by the plaintiff, and

(3) the costs of the action.

> The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in

exceptional cases may award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a).

The Seventh Circuit has also long recognized that "the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir.1982).

Pursuant to the unauthorized license agreement that FWAH has alleged was executed unilaterally by Nahlawi without any authority from the remaining membership of FWAH, FWAH paid 3% of its annual gross sales to FUSA as a royalty fee. Therefore, a fair measure of actual damages sustained by FWAH would be an amount equal to the royalty fees paid by FWAH to FUSA from 2005 to 2009 since such sums should never have been paid by FWAH in the first place.

The FWAH tax returns from 2005-2009, attached hereto as Group Exhibit A,[1] show both the annual gross sales and the "Royalty Fees" per the deductions statements in each return, and confirm that, in fact, 3% of said gross sales were paid as a royalty fee. Group Exhibit A indicates the following gross sales and royalty fees paid per the tax returns:

| YEAR | GROSS SALES | ROYALTY FEES |
|------|-------------|--------------|
| 2005 | $353,096 | $10,593 |
| 2006 | $2,393,558 | $74,599 |
| 2007 | $2,766,776 | $86,514 |
| 2008 | $2,930,394 | $91,393 |

---

[1] Group Exhibit A consists of the first page and relevant worksheet showing the royalty fees for each tax return. The complete returns can be provided to the Court when conducting the evidentiary hearing on damages, unless sooner requested by the Court.

| | | |
|---|---|---|
| 2009 | $2,553,276 | $60,465[2] |
| TOTAL | | $323,564 |

In case any doubt existed about whether or not FWAH actually paid these amounts to FUSA, in 2009, after the other Members of FWAH has ousted Nahlawi, they obtained, for the first time, the banking records of FWAH. These records, attached hereto as Group Exhibit B, although incomplete, show that payments were made from FWAH to FUSA totaling $130,000 in 2007 and $105,000 in 2008, which are more than $57,000 **higher** than the 3% amounts identified in the tax returns. Adjusting for these amounts, the total from above increases to $380,657. It is not difficult to assume that higher payments were made to FUSA in 2005, 2006, and 2009 as well, thereby increasing the amount of actual damages incurred by FWAH even higher.

Furthermore, while FWAH has no evidence related to the profits earned by FUSA during the time it infringed on the Fuego marks because no evidence was produced in discovery, it would be fair to assume that a similar 3% royalty fee was charged by FUSA to the other known third-party licensee, Foodworks 2047, LLC.[3] It would be further fair to assume that the annual gross sales of the FWAH restaurant would be the same or similar to the annual gross sales of the Chicago restaurant. Therefore, a fair way to measure profits to be disgorged would be to simply double the amount identified above, which would be permitted by *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011).

In addition to these money damages, FWAH would seek:

(A) a money judgment in favor of FWAH and against FUSA in an amount equivalent to three times the amount awarded above, in accordance with 15 U.S.C. § 1117(a);

---

2 FWAH stopped paying royalty fees during 2009 after the ouster of Eddie Nahlawi as Manager of the LLC, and thus the total percentage of royalty fees paid for 2009 is less than 3% of gross annual sales.
3 FWAH is not aware of whether or not FUSA entered into any other license agreements with other third parties.

5

(B) awarding pre-judgment interest, in accordance with 15 U.S.C. § 1117(a); and

(C) awarding court costs and attorneys' fees, in accordance with 15 U.S.C. § 1117(a).

## COUNT IV—TRADE DRESS INFRINGEMENT

Count IV seeks damages for trademark infringement of the Fuego Dress. As with trademark infringement, trade dress infringement damages include disgorged profits of FUSA related to the infringement and actual damages to FWAH due to the infringement. *RNA Corp. v. The Procter & Gamble Co.*, 747 F.Supp.2d 1008 (N.D. Ill., 2010). No license agreement existed between FWAH and FUSA related to trade dress, and no royalty fees were paid from FWAH to FUSA, so the actual damages sustained by FWAH as identified in the chart above would not be an applicable measure of actual damages.

Nevertheless, FUSA admits in its own Complaint that a license agreement did exist between FUSA and third parties, including Foodworks 2047, LLC. (Doc. 1 at ¶ 54). It is further a fair assumption that the royalty fee charged in such license agreement is a similar fee based upon gross sales. Therefore, at a minimum, a fair measure of damages for trade dress infringement would be $380,657.

In addition, FWAH would seek the following remedies:

(1) granting a money judgment in favor of FWAH and against FUSA in an amount equivalent to three times the amount awarded above in accordance with 15 U.S.C. § 1117(a);

(2) temporarily, preliminarily, and permanently enjoining FUSA and all individuals or entities acting in concert with FUSA from infringing upon the Trade Dress in any manner, in accordance with 15 U.S.C. § 1116;

(3) awarding pre-judgment interest, in accordance with 15 U.S.C. § 1117(a); and

(4) awarding court costs and attorneys' fees, in accordance with 15 U.S.C. § 1117(a).

## COUNT V—DILUTION OF FUEGO MARKS

## COUNT VI—DILUTION OF TRADE DRESS

Both Counts V and VI seek damages for dilution of the Fuego Marks and trade dress. FWAH has not retained an expert to opine regarding the damages caused by dilution, and therefore would not seek damages under these counts.

## COUNT VII—CANCELLATION OF TRADEMARK REGISTRATION

Count VII seeks cancellation of the federal trademark registration for the FUEGO logo mark. On January 25, 2013, the registration for the FUEGO logo was cancelled by the USPTO due to failure to maintain the trademark registration, (see Exhibit C), effectively mooting the necessity for relief under this count.

## COUNT VIII—FRAUDULENT/FALSE REPRESENTATION

Count VIII seeks damages for fraudulent or false representations regarding the ownership interest in the FUEGO logo mark in violation of 15 U.S.C. § 1120 when FUSA filed a federal trademark application indicating it was the owner of the FUEGO logo mark when FWAH was the true owner. The damages to FWAH would be (a) related to the application itself, which has been rendered moot, and (b) the costs and attorneys' fees incurred by FWAH in bringing the claim against FUSA, which are subsumed in the other counts above.

## COUNT IX—CONVERSION

Count IX seeks damages for conversion from FUSA for converting the royalty fees that Nahlawi caused FWAH to pay to FUSA and for royalty fees paid by third-parties, including Foodworks 2047, LLC, to FUSA. These amounts are dealt with above in Counts III and IV; FWAH would seek the same relief. In addition, FWAH would seek, as punitive damages, an amount equal to the attorneys' fees it has incurred in maintaining this action.

## ATTORNEYS' FEES

As noted above, the recovery of attorneys' fees is permitted under several counts of the Counterclaim, both by statute (15 U.S.C. § 1117(a), Counts III-VIII) and by common law (Count IX). On August 28, 2012, a Petition for Attorneys' Fees and accompanying affidavit of Kevin K. McCormick was filed (Dkt. 95) indicating 289 hours rendering a fee of $75,140.00. Since that Petition, additional attorneys' fees were incurred by FWAH. Attached hereto as Exhibit D is an affidavit of attorneys' fees by Kevin K. McCormick, which indicates that $11,115.00 in fees since August 28, 2012 have been incurred by FWAH. In total, FWAH has incurred $86,255.00 in attorneys' fees related to this action.

## CONCLUSION

As the Court is well aware, FUSA has produced a dearth of discoverable information during this litigation, and the above information is all that FWAH can produce that relates to damages for this case. It is not unreasonable to believe that the calculation of damages is, in fact, much higher. In addition to the declaratory relief for Counts I and II, FWAH requests that the Court enter a money judgment against FUSA in the minimum following amounts:

A. Actual damages for trademark infringement: $380,657

B. Disgorged profits for trademark infringement: $380,657

C. Treble damages for trademark infringement: $2,283,942

D. Disgorged profits for trade dress infringement: $380,657

E. Treble damages for trade dress infringement: $1,141,971

F. Prejudgment interest for trade dress and trademark infringement: TBD

G. Attorneys' fees: $86,255

        Respectfully Submitted,

        FOODWORKS OF ARLINGTON HEIGHTS, LLC


By:   /s/ Kevin K. McCormick
       Kevin K. McCormick
       One of Its Attorneys


Kevin K. McCormick
Lee F. DeWald
**DeWald Law Group PC**
1237 S. Arlington Heights Road
Arlington Heights, Illinois 60005
(847) 437-1246
#6286831