# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FOODWORKS USA, INC.,**

**Plaintiff,**

**v.**

**FOODWORKS OF ARLINGTON HEIGHTS, LLC,**

**Defendant.**

**No. 10 C 1020**

**Magistrate Judge Mary M. Rowland**

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed a Motion to Reconsider and Vacate the Court's August 14, 2012, July 1, 2013, and August 7, 2013 Orders. (Dkt. 188). For the reasons stated below, the Motion is denied.

## I. BACKGROUND

Defendant Foodworks of Arlington Heights, LLC (FWAH), operates a Mexican-themed restaurant in Arlington Heights, Illinois, known as the Fuego Mexican Grill and Margarita Bar (Fuego). Plaintiff Foodworks USA, Inc.'s (FUSA's) Complaint and Defendant's Counterclaim assert intellectual property violations relative to the name of the restaurant and the trade dress used at the restaurant. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28

U.S.C. § 636(c). The tortured history of this case is well known to the parties, but because the chronology is relevant to the instant Motion, the Court will revisit it.[1]

## A. The Complaint and Counterclaim

Plaintiff filed its Complaint on February 15, 2010, alleging trademark infringement, trade dress infringement, unfair competition, dilution of trademark, dilution of trade dress, deceptive trade practices, and breach of contract. The gravamen of the Complaint is that from January 2005 through January 2010, Defendant operated Fuego under a license agreement and management agreement with Plaintiff, pursuant to which Plaintiff provided consulting services and Defendant was granted a nonexclusive license to use Plaintiff's registered servicemark, "Fuego Mexican Grill and Margarita Bar" to market and promote its restaurant business. (Compl. 1–2 & ¶ 10).

Defendant filed its Answer and Counterclaim on April 19, 2010, also alleging trademark infringement, trade dress infringement, unfair competition, dilution of trademark, and dilution of trade dress. In addition, the Counterclaim alleges fraudulent or false representation and conversion, and requests a declaratory judgment. Not surprisingly, the Counterclaim describes a different scenario from the Complaint. The Counterclaim asserts that Defendant's shareholders, which included Ayad Nahlawi, Plaintiff's principal owner, were responsible for developing the service mark and trade dress for the Fuego restaurant. (Counterclaim ¶¶ 14, 18–22,

---

[1] Additional factual background is laid out in the Court's August 14, 2012, December 3, 2012, and July 1, 2013 Orders. (Dkt. 94, 122, 152).

24). An August 2004 operating agreement indicated that Nahlawi would be the manager of both Defendant and the restaurant, but said nothing about the restaurant operating under any form of an intellectual property license. (*Id.* ¶ 16). In October 2006, Nahlawi circulated various documents to Defendant's shareholders, including a license agreement and a management agreement. (Counterclaim ¶ 26). These documents indicated that a company primarily owned by Nahlawi, known as Foodworks Management, Inc., was Fuego's general manager. (*Id.* ¶ 27). According to the allegations in the counterclaim, although these documents indicated that they were approved by Defendant's shareholders on October 30, 2006 (*id.* Exs. F, G), they were never approved by a majority of members (*id.* ¶ 27). Instead, sometime after October 30, Nahlawi unilaterally executed these documents as Defendant's manager, without the requisite approval of Defendant's shareholders. (*Id.* ¶¶ 27–28).

## B. The Complaint is Dismissed for Failure to Prosecute

Plaintiff was first served with discovery requests in June 2010. (Dkt. 85 at ¶ 8, Exs. A–D). Over the subsequent *23 months*, Plaintiff ignored deadlines to respond to Defendant's discovery despite the Court granting several extensions, Defendant filing a motion to compel, and Plaintiff repeatedly assuring the Court that responses were forthcoming. (Dkt. 66, 67, 72, 78, 79, 81, 82, 85 at ¶ 10). Finally, in late April and early May 2012, Plaintiff submitted responses to interrogatories, 13 documents. and a CD containing Defendant's financial statements, which were purportedly responsive to Defendant's discovery requests. (Dkt. 85 at ¶¶ 20, 23 39 & Exs. F–I).

However, the Court found the discovery responses grossly deficient. While the interrogatories were responded to without objections, the responses contained practically none of the facts and details requested. (*Id.* ¶¶ 27–35, Ex. G). For example, Plaintiff's interrogatory responses, unsigned in violation of Rule 33, provided *no information* about the trademark and trade dress Defendant is alleged to have infringed. (*Id.* ¶¶ 30–33, Ex. G). Further, Plaintiff's document production consisted *primarily* of *Defendant's* financial records. (*Id.* ¶¶ 37, 39, Exs. F, I).

On June 5, 2012, Defendant filed a Motion for Voluntary Dismissal for Failure to Prosecute, for Sanctions, and Other Relief. (Dkt. 85). Despite being granted two extensions, Plaintiff *failed to respond* to Defendant's motion. (Dkt. 84, 87, 89, 91). The final due date passed with no response or request for additional time.

On August 14, 2012, the Court granted Defendant's motion in part. (Dkt. 94). The Court found that Plaintiff failed to comply with Court orders and Court-imposed deadlines. The Court concluded that Plaintiff never had a serious intention to prosecute this case, which wasted the Court's time and clogged the Court's calendar. The Court also found that Defendant, required to attend many status hearings in an unsuccessful effort to get Plaintiff to respond to discovery requests, was prejudiced by Plaintiff's dilatory conduct. Moreover, the Court found that the merits of Plaintiff's case were seriously in doubt—Ayad Nahlawi, Plaintiff's principal owner and Defendant's former manager, surely must be in possession and control of relevant information relating to the trademark and trade dress claims that form the basis for Plaintiff's lawsuit. Yet, after numerous delays and missed deadlines, Plaintiff

produced little, if any, information that supported its claims. Further, Plaintiff received "due warning" that its case was subject to dismissal. In sum, the Court found that the balance of factors governing dismissal under Rule 41(b) clearly favored dismissal for failure to prosecute and dismissed Plaintiff's complaint with prejudice. The Court, however, denied Defendant's request for a default judgment against Plaintiff on Defendant's Counterclaim.

## C. The Parties File Motions for Reconsideration

Each party moved to reconsider the August 14, 2012 Order. (Dkt. 97, 109). The Court denied these requests on December 3, 2012. (Dkt. 122). In denying the Plaintiff's Motion to Reconsider, the Court found that Plaintiff neither identified any newly discovered evidence, nor did it argue that any manifest error of law or fact was committed. Instead, Plaintiff simply attempted to explain its failure to timely respond to discovery during the previous two years. (Dkt. 109 at ¶¶ 7–10). The Court reaffirmed its finding that despite Plaintiff's repeated assurances that discovery responses were forthcoming, only woefully inadequate discovery had ever been produced by Plaintiff. Accordingly, the Court found that Plaintiff did not provide any support for its statement that it has "meritorious and valid claims that are part of this proceeding." (Dkt. 122 at 7 (citing Dkt. 109 at ¶ 10)). Because Plaintiff had failed to prosecute its case, despite sufficient opportunity to do so, and failed to follow the Court's orders and schedules, the Court denied Plaintiff's Motion to Reconsider the Dismissal Order.

The Court's December 3, 2012 Order also denied Defendant's motion to reconsider the Court's refusal to enter a default judgment on Defendant's Counterclaim. In doing so, the Court gave Plaintiff "a *final* opportunity to *fully* respond to the interrogatories and requests to produce that were first served on June 16, 2010." (Dkt. 122 at 10) (emphasis in original). Specifically, the Court ordered Plaintiff to:

> 1. Revise its interrogatory responses, without objections, providing all facts and detail requested. For example, in responding to interrogatories 2 and 3, Plaintiff shall describe in *detail* the subject matter knowledge of each person identified. In responding to interrogatory 9, Plaintiff shall describe in *detail* all the steps that Plaintiff took "over a period of nearly 20 years" to develop the trade dress at issue. In responding to interrogatories 10, 11 and 12, Plaintiff shall describe in *detail* how third parties helped *Plaintiff* (not Defendant) develop the trade mark and trade dress at issue. In responding to interrogatory 16, Plaintiff shall describe in *detail* the license agreement with Foodworks 2047, including producing a copy of the agreement. In responding to interrogatory 18, Plaintiff shall describe in *detail* the information about who spent promotional dollars, including identifying the person(s) involved. In responding to interrogatory 19, Plaintiff shall describe in *detail* the royalty payments received by Plaintiff from Defendant during the relevant time period. All other interrogatory responses shall be similarly revised to provide the level of detail requested.
>
> 2. Serve Defendant with a signed and verified copy of the revised interrogatory responses as required by Rule 33.
>
> 3. Serve Defendant with a written response to the request to produce, without objections.
>
> 4. Supplement its production to provide Defendant with all relevant documents and information in its possession, custody or control that responds to the request to produce.
>
> 5. Provide Defendant with a signed affidavit describing the efforts it took to locate responsive documents or information.
>
> 6. Serve discovery requests, if any, on Defendant that relate to Defendant's Counterclaim.

(*Id.* 10–11) (emphasis in original).

The Court allowed Plaintiff 30 days, until January 2, 2013, to respond to the outstanding discovery and admonished Plaintiff that "[n]o further extensions will be granted." (Dkt. 122 at 11). Plaintiff requested a two-day extension, until January 4, 2013, to complete discovery, which the Court granted. (Dkt. 123, 128). Finally, on January 8, 2013, Plaintiff served Defendant with revised interrogatory responses.[2] (Dkt. 135, Ex. A). Plaintiff never served any discovery regarding Defendant's counterclaims.

## D. Defendant Files a Motion for Default Judgment

On January 11, 2013, Defendant filed a renewed Motion for Default Judgment. (Dkt. 135). Defendant argued that the revised interrogatory responses were deficient, containing "the same objectionable, non-responsive, lack of detail that the Court had already admonished FUSA for producing in the first place." (Dkt. 140 at 5). Defendant also asserted that other than serving revised and verified interrogatory responses, Plaintiff failed to complete the other four tasks specifically ordered by

---

[2] During this time, Plaintiff unsuccessfully appealed the dismissal of its case. *Foodworks USA, Inc. v. Foodworks of Arlington Heights, LLC*, No. 13-1022 (7th Cir. filed Jan. 3, 2013). On January 7, 2013, the Court of Appeals gave Plaintiff until January 22, 2013 to explain why its appeal should not be dismissed for lack of jurisdiction. Plaintiff's failure to respond resulted in the Court issuing a rule to show cause on January 30, 2013, giving Plaintiff until February 6, 2013 to respond. On February 27, 2013, three weeks overdue, FUSA responded, stating that it was still researching the jurisdictional issue. On March 4, 2013, the Court of Appeals ordered FUSA to file a memorandum by March 11, 2013, or a motion to dismiss pursuant to Federal Rule of Appellate Procedure 42(b). On March 29, 2013, FUSA responded, requesting the Court of Appeals to drop its rule to show cause and allow FUSA to voluntarily dismiss its appeal. On April 1, 2013, the Court of Appeals ordered FUSA to file its motion to dismiss before April 8, 2013. When no motion was filed by April 23, 2013, the Court of Appeals issued an order to show cause, again admonishing FUSA that a failure to respond by April 30, 2013, could result in monetary or disciplinary sanctions. On May 10, 2013, ten days overdue, FUSA filed its motion to dismiss pursuant to Rule 42(b), which was granted that day.

the Court. (Dkt. 135 at ¶¶ 5–6). Thereafter, on January 13, 2013, Plaintiff mailed its Response to the Request to Produce, purporting to include supplemental documents and information. (Dkt. 148 at ¶¶ 5–6; Dkt. 146 at ¶¶ 1–2). However, the "supplemental" response merely included 14 pages of documents previously produced, all of which were Defendant's documents. (Dkt. 148 at ¶ 6; Dkt. 146 at ¶ 3 & Ex. E).[3]

On July 1, 2013, the Court granted Defendant's Motion for Default Judgment and set this cause over for an evidentiary hearing as to the issue of damages. (Dkt. 152). The Court found that Plaintiff's continuing discovery violations and flaunting of Court-ordered deadlines warranted granting default judgment on Defendant's Counterclaim. (*Id.*). Specifically, the Court found that Plaintiff's discovery responses remained grossly deficient, Plaintiff's failures to adequately respond to discovery and comply with Court orders demonstrated bad faith and fault, and default judgment was the appropriate Rule 37 sanction for Plaintiff's conduct. (*Id.* at 14–23).

In its ruling, the Court detailed all of Plaintiff's grossly deficient discovery responses. (Dkt. 152 at 14–15). The Court found incredible Plaintiff's contention that it has *no* documents relating to: (1) the formation and ownership of *Plaintiff's* business, Foodworks USA; (2) the development, implementation, and licensing of the trade dress and trademark that *Plaintiff* placed at issue; (3) payments received by

---

[3] On January 13, 2013, Plaintiff also served Defendant with discovery requests. (Dkt. 146 at ¶ 1 & Ex. E; *see* Dkt. 148 at ¶ 5 & Ex. A).

*Plaintiff* for licensing the trade dress and trademark; or (4) the state court cases filed by *Plaintiff* alleging similar trademark and trade dress violations. (*Id.* at 18).

On August 7, 2013, the Court denied Plaintiff's motion to reconsider the July 1, 2013 Order. (Dkt. 161). In its motion to reconsider, Plaintiff neither identified any newly discovered evidence nor argued that any manifest error of law or fact was committed. Instead, Plaintiff summarily asserted, with little elucidation, that granting default judgment constitutes a "manifest injustice." (Dkt. 155 at ¶ 37). Plaintiff did not address any of its discovery deficiencies. Moreover, Plaintiff never provided the Court-ordered affidavit, "describing the efforts it took to locate responsive documents or information." (Dkt. 122 at 11). The Court concluded that mere assertions by *counsel* in the motion for reconsideration that "[e]ven as late as the present, Plaintiff's principal continues to search for any and all possible documents or other materials which support his work in the development, refinement and implementation of any of the systems, trademarks and/or trade dress at issue" (Dkt. 155 at ¶ 29), was neither credible nor sufficient at such a late stage of the litigation. Similarly, Plaintiff made no effort to explain or justify its repeated violations of Court-ordered deadlines. Plaintiff did attach a "new" document to its motion for reconsideration—a scanned copy of a book entitled *Mexicasa, the Enchanting Inns and Haciendas of Mexico*—but made no effort to explain how this book was relevant to any specific document or interrogatory request or why it was never produced in discovery.

Plaintiff attempted to obfuscate its continuing discovery violations by arguing the merits of its case. (Dkt. 155 at ¶¶ 21–23, 42–44). Specifically, Plaintiff argued that the Agreements attached to Defendant's Counterclaim established Plaintiff's right to the trade dress, which were being used by Defendant only pursuant to an enforceable Licensing Agreement. (*Id.* ¶ 42). However, "the purported existences of a meritorious case does not explain away Plaintiff's utter disregard for the Court's orders and schedules." (Dkt. 122 at 8; Dkt. 152 at 20). Moreover, the purported License Agreement between the parties was executed only be a minority of Defendant's members despite clear language in the Operating Agreement that requires "the prior agreement of a 65% majority of the Membership Interests" to "sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the Company." (Counterclaim ¶ 27 & Ex. E at § 5.3).[4]

On September 27, 2013, Defendant filed a motion for judgment on damages. (Dkt. 166). Plaintiff filed a response on October 18, 2013. (Dkt. 173). The Court set an evidentiary hearing on the damages motion for November 6, 2013. (Dkt. 176).

**E. Plaintiff Retains New Counsel**

On November 5, 2013, Plaintiff's counsel filed a motion to withdraw as attorney after being notified by FUSA that his representation was terminated. (Dkt. 177).

---

[4] Plaintiff also argued that Defendant "[has] not and cannot provide this Court with any documentation" undermining the Licensing Agreement. (Dkt. 155 ¶ 43). But it is FUSA that has failed to establish that the Licensing Agreement was properly executed. In opposing FWAH's motion for default judgment, FUSA attached documents purporting to demonstrate that Nahlawi was authorized by a majority of FWAH's members to act on their behalf, but the documents on their face confirm that only 40% of FWAH's membership interests authorized Nahlawi to execute the License Agreement. (Dkt. 146 at 3 & Exs. A, C).

After new counsel filed an appearance, (Dkt. 184), the Court allowed former counsel to withdraw. (Dkt. 190).

## F. Plaintiff Files Instant Motion for Reconsideration

On December 2, 2013, with the assistance of new counsel, Plaintiff filed the current motion to reconsider and vacate the Court's August 4, 2012, July 1, 2013, and August 7, 2013 orders. (Dkt. 188). On December 13, 2013, after the parties advised that they were discussing global settlement of all pending federal and state cases, the Court entered and continued the motion for damages and the motion for reconsideration. (Dkt. 192).

After the settlement discussions proved unsuccessful, the Court granted Defendant's request to conduct limited discovery related to the allegations raised in the motion for reconsideration. (Dkt. 195). Defendant filed its response to the motion for reconsideration on July 11, 2014. (Dkt. 201). On July 28, 2014, Plaintiff filed its reply. (Dkt. 206).

## II. DISCUSSION

Plaintiff requests that the Court reconsider and vacate its three previous sanctions orders (August 14, 2012, July 1, 2013, and August 7, 2013) because of "the ineffectiveness of FUSA's prior legal counsel and the lack of communication between counsel and his client which was the direct and proximate cause of the various sanction by this Court . . . against FUSA." (Mot. ¶ 5). Specifically, Ayad Nahlawi, Plaintiff's president, sole shareholder and director, attests that FUSA was unaware of the August 14, 2012, July 1, 2013, and August 7, 2013 sanctions orders until Octo-

ber 14, 2013. (Nahlawi Decl. ¶ 11). Nahlawi also asserts that he "faithfully provided" all information requested by former counsel and that he never withheld any information requested by former counsel related to the pending litigation. (*Id.* ¶¶ 5–6). Indeed, Nahlawi declares that "[a]t no time since his involvement in the litigation did [former counsel] ever advise [him] that there were any issues in the pending litigation related to FUSA's discovery responses." (*Id.* ¶ 7). In sum, Nahlawi asserts "that all of FUSA's prior discovery failures and the related sanctions that have been assessed against FUSA in the pending litigation are directly attributable to the ineffective representation of FUSA's interests by its prior legal counsel." (*Id.* ¶ 15).

Defendant counters that Nahlawi knew or should have known about the discovery issues and the sanctions orders. (Resp. ¶¶ 5, 12, 19). Contrary to Nahlawi's assertions, Defendant argues that Nahlawi "was an active and informed participant" during the discovery period. (Resp. ¶¶ 14–15). As an example, Defendant notes that Nahlawi verified Plaintiff's amended discovery responses in January 2013. (*Id.* ¶ 18).

Defendant subpoenaed records from Plaintiff's former counsel, Mr. Kevin Besetzny (Counsel), and took his deposition. Counsel testified that he kept Nahlawi and FUSA informed and appraised of relevant events in this lawsuit, including discovery issues. (Besetzny Dep. 13–17, 27–28). For example, Counsel stated that he kept FUSA informed about preparing discovery responses, supplementing discovery responses, searching for additional materials and documents to respond to discovery

requests, and explaining the necessity for supplementing the discovery responses. (*Id.* 17, 27–28, 30, 32, 37). Counsel recalled informing Nahlawi in a series of conversation in 2012 and 2013 that "the Court found responses to be inadequate, there had been motions to compel, there had been various other motions filed, and [Counsel was] attempting to provide as much information as possible to respond to the discovery." (*Id.* 18; *see id.* at 19–20, 32, 37). Counsel recalled discussing Defendant's motion for involuntary dismissal with Nahlawi shortly after it was filed. (*Id.* 21). He also recalled discussing with Nahlawi FUSA's response to Defendant's motion for damages. (*Id.* 40–41).

Nevertheless, Counsel stated that he had no custom or practice to provide FUSA with notice of Court orders or opinions, to seek approval by FUSA of pleadings before they were filed, or to provide copies to FUSA of pleadings by either party after they were filed. (Besetzny Dep. 60–63). Counsel had no specific recollection of contemporaneous discussions with Nahlawi or other FUSA officers regarding any of the Court's orders or opinions. (*Id.* 20, 33–34, 38, 39–40). Indeed, in a post-deposition declaration, Besetzny acknowledged that he did not provide Nahlawi, or anyone else affiliated with FUSA, with copies of the sanctions orders entered on August 14, 2012, July 1, 2013, and August 7, 2013, until on or after September 20, 2013. (Besetzny Decl. ¶ 5).[5]

---

[5] Defendant has moved to strike this declaration, which was attached to Plaintiff's reply. (Dkt. 207). Defendant argues that any clarification of Counsel's deposition testimony should have taken place during the deposition when Plaintiff's current counsel cross-examined Besetzny. (*Id.* ¶ 6). However, because Defendant's objections go primarily to the

Counsel produced a sparse set of emails sent to Nahlawi that relate to the August 14, 2012, July 1, 2013, and August 7, 2013 sanctions orders and affiliated pleadings. (Resp. Exs. 1–2; Besetzny Dep. 44–45 & Exs. 10–14). These emails suggest that Nahlawi was generally aware of Court orders and the need to supplement discovery, at least during the period of January through October 2013. (Besetzny Dep. 45–59 & Exs. 10–14).

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."[6] *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see Keene Corp.*, 561 F. Supp. at 665 ("Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion."). "A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Ahmed*, 388 F.3d at 249 ("It's as if the movant, when he appealed,

---

weight of the evidence, Defendant's Motion to Strike the Declaration of Kevin Besetzny and Portions of Plaintiff's Reply [207] is **DENIED**.

[6] The parties believe this Motion is governed by Rule 59(e). (Resp. ¶ 3; *see* Reply 2). But Rule 59 applies only where a final judgment has been entered post-trial.

had filed two copies of his appeal brief, and when his appeal was rejected he asked us to read the second copy.").

Plaintiff argues that it is entitled to reconsideration of the sanctions orders because the discovery violations were solely the fault of its former counsel. (Mot. ¶¶ 5, 10). Plaintiff contends that Nahlawi first learning about the August 14, 2012, July 1, 2013, and August 7, 2013 sanctions orders on October 14, 2013, constitutes newly discovered evidence that warrants vacating these orders. (*Id.* ¶¶ 6–7). Nahlawi asserts that if these opinions are vacated, he will timely supplement FUSA's discovery responses to comply with previous Court orders. (Nahlawi Decl. ¶ 17).

The evidence does indicate that Plaintiff's former counsel failed to consistently keep FUSA informed about the status of the case and to share pertinent documents on a timely basis, particularly the sanctions orders at issue here. However, Nahlawi's assertion that "[a]t no time since his involvement in the litigation did [former counsel] ever advise [him] that there were any issues in the pending litigation related to FUSA's discovery responses" (Nahlawi Decl. ¶ 7) is not entirely credible. The emails alone suggest that Nahlawi was aware of issues related to FUSA's discovery responses.

Nevertheless, even if the Court fully credited Nahlawi's declaration, the "newly discovered evidence" identified by Plaintiff would not warrant reconsideration of the Court's orders. On the contrary, FUSA is bound by its former counsel's actions. *See United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) ("The clients are principals, the attorney is an agent, and under the law of agency

the principal is bound by his chosen agent's deeds."). Indeed, "[t]he rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (emphasis in original).

The *Bakery Machinery* case is instructive. In *Bakery Machinery*, after plaintiff's counsel failed to comply with a series of court orders and the district court imposed monetary sanctions to no avail, the district judge struck all of plaintiff's pleadings, granted defendant's motion for default, and set a date to determine damages under the amended counterclaim. 570 F.3d at 846–47. A few weeks later, plaintiff moved to substitute counsel, asserting that it had just learned of the default judgment and contending that "for the previous nine months, every inquiry it made of [counsel] concerning the status of the litigation was answered with his assurance that it was 'going well.'" *Id.* at 847. The court granted the motion to substitute counsel but denied the motion to vacate, ruling that former counsel "had never explained his repeated failures to comply with the court's orders and that his actions were willful and did not warrant relief." *Id.* The district court noted that, "except for excusable neglect, a party is held to the conduct of its attorney." *Id.*

On appeal, appellant argued that the district court erred in denying its motion to vacate because its former counsel affirmatively deceived a diligent client about the litigation's status. *Bakery Mach.*, 570 F.3d at 848. The Seventh Circuit disagreed. It noted that a lawyer who inexcusably neglects his client's obligations does not pre-

sent exceptional circumstances warranting extraordinary relief. *Id.* Instead, where counsel neglects his client's obligations, the client's "beef is against [counsel], not the court's ruling on the case." *Id.* Furthermore, counsel's deception of a client becomes counsel's liability and not the client's opponent. *Id.*; *see Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986) ("Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either."). While a lawyer's malpractice "may be a good reason to recover from the lawyer[, it] does not justify prolonging litigation against the original adversary." *7108 W. Grand Ave.*, 15 F.3d at 633.

The *Bakery Machinery* holding applies here. Even if the discovery sanctions were caused entirely by Counsel's ineffective representation of FUSA's interests,[7] Plaintiff is bound by Counsel's actions and omissions. *Bakery Mach.*, 570 F.3d at 848; *7108 W. Grand Ave.*, 15 F.3d at 634. Moreover, it would not be fair to penalize Defendant with further delay because Plaintiff's counsel was negligent or engaged in gross misconduct. *Bakery Mach.*, 570 F.3d at 848–49. ("Since clients must be held accountable for their attorney's actions, it does not matter where the actions fall be-

---

[7] The Court is assuming for the purposes only of this motion that the Plaintiff's failure to participate in discovery in prosecuting its case or in defending the counterclaim brought against it is the fault of its former counsel. The Court makes this assumption because that is the basis of the motion to reconsider. But the Court makes no such finding. It could easily be the case that Plaintiff failed to provide discovery responses because it has no evidence supporting its claim.

tween 'mere negligence' and 'gross misconduct.'"); *see 7108 W. Grand Ave.*, 15 F.3d at 635 ("It is unnecessary to ask the district court to determine where on the line from 'mere' negligence to intentional misconduct attorney [counsel's] handling of this litigation falls, because the answer does not make any difference.").

There is also no evidence that Counsel's actions and omissions fell outside the scope of his employment or were the product of excusable neglect. *See Bakery Mach.*, 570 F.3d at 848 ("The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client."). On the contrary, Counsel was retained to represent Plaintiff's interests in this lawsuit. And the myriad of discovery violations and missed court-ordered deadlines over many years does not constitute excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (When deciding whether neglect is excusable or not, a trial court must examine "all relevant circumstances surrounding the party's omission . . . , [including] the danger of prejudice to the [opponent], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) ("Although attorney carelessness can constitute 'excusable neglect' . . . , attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant.") (citations omitted); *Harrington v. City of Chicago*, 433 F.3d 542, 547–48 (7th Cir. 2006) (failure of

counsel to respond to discovery could not be excused by deaths in his family during pendency of action).

The cases cited by Plaintiff are inapposite. Plaintiff mistakenly believes that *Hoskins v. Dart*, 633 F.3d 541 (7th Cir. 2011), stands for the proposition that sanctions should not be imposed against litigants when it is their counsel who violates discovery rules or court orders. (Mot. ¶ 11). In *Hoskins*, the *pro se* plaintiff brought five lawsuits against the Sheriff of Cook County. 633 F.3d at 542, 544. The district court dismissed all five lawsuits as a sanction after concluding that Hoskins had fraudulently misrepresented his litigation history to the court. *Id.* at 542. The Seventh Circuit affirmed, noting that "courts may impose appropriate sanctions, including dismissal or default, against litigants who violate discovery rules and other rules and orders designed to enable judges to control their dockets and manage the flow of litigation." *Id.* at 543; *see also Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 778–79 (7th Cir. 2013) (explaining that willful defiance of court discovery order can warrant dismissal); *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011) (explaining that a failure to meet deadlines despite several extensions, failure to heed a warning of dismissal, and submission of incomplete interrogatories warranted dismissal). Although *Hoskins* affirms that sanctions, including case dismissals, are appropriate against *pro se* litigants who violate rules and orders, it does not undermine *Bakery Machinery*'s clear holding that a client is bound by its counsel's actions.

Plaintiff cites *Jones v. Page*, 76 F.3d 831 (7th Cir. 1996), for the proposition that FUSA is entitled to relief from the sanctions orders because "its prior failure to have fully and faithfully complied with prior court Order . . . [was] the direct result of ineffectiveness of its prior legal counsel." (Mot. ¶ 10). The *Jones* court affirmed the denial of the habeas petition, finding inter alia that Jones was not denied his Sixth Amendment right to the effective assistance of counsel. 76 F.3d at 839–49. There is no constitutional right to effective assistance of counsel in a civil case. *See Stanciel v. Gramley*, 265 F.3d 575, 581 (7th Cir. 2001). Instead, "[t]he proper remedy for inadequate representation in a civil case lies not in dragging the opposing party through another trial, but rather in a malpractice action against the offending attorney." *Id.* Finally, Plaintiff cites *Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013), to demonstrate that a lawyer has an affirmative duty to take necessary steps to keep a client informed about the direction of the litigation. (Reply 4). True, but as *Ball* demonstrates, the remedy when a lawyer fails in this regard is a separate malpractice action. 723 F.3d at 815.

In its reply, Plaintiff notes that Besetzny does not maintain malpractice insurance. (Reply 4). Defendant objects to this evidence as inappropriately raised in the reply. (Dkt. 207 at ¶ 5). Plaintiff acknowledges that this information "is not outcome determinative with respect to the pending Motion to Reconsider." (Dkt. 209 at 2). In any event, the Court's decision to deny the motion for reconsideration is not dependent on whether Counsel has malpractice insurance. FUSA "voluntarily *chose* [Besetzny], without, presumably, inquiring into his insured status." *Bakery Mach.*,

570 F.3d at 849 (emphasis in original); *see Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

### III. CONCLUSION

For the reasons described above, Plaintiff's Motion to Reconsider and Vacate August 14, 2012, July 1, 2013, and August 7, 2013 Orders [188] is **DENIED**. Defendant's Motion to Strike the Declaration of Kevin Besetzny and Portions of Plaintiff's Reply [207] is **DENIED**.

E N T E R:

Dated: September 30, 2014

_____
MARY M. ROWLAND
United States Magistrate Judge