Error! Bookmark not defined.UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOODWORKS USA, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> FOODWORKS OF ARLINGTON HEIGHTS, LLC, <br><br> Defendant/Counter-Plaintiff. | No. 10 CV 1020 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Defendant/Counter-Plaintiff has filed a Motion for Judgment on Damages. For the reasons stated below, the motion is granted in part, denied in part, and reserved in part.

## I. BACKGROUND

Defendant/Counter-Plaintiff Foodworks of Arlington Heights (FWAH) operates a Mexican-themed restaurant in Arlington Heights, Illinois, known as the Fuego Mexican Grill and Margarita Bar (Fuego). FWAH's Counterclaim asserts intellectual property violations against Plaintiff/Counter-Defendant Foodworks USA (FUSA) relative to the name of the restaurant and the trade dress used at the restaurant. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The tortured history of this case is well

known to the parties, but because the background is relevant to the instant Motion, the Court will revisit it.[1]

## A. Defendant's Counterclaim

Defendant FWAH's Counterclaim alleges federal trademark and trade dress infringement and dilution, false representation, and common law conversion. FWAH seeks declaratory and injunctive relief, disgorgement of all monies received by FUSA from licensing the trademarks and trade dress, money damages, and costs and fees. Specifically, the Counterclaim asserts that FWAH's shareholders, which included Ayad Nahlawi, FUSA's principal owner, were responsible for developing the service mark and trade dress for the Fuego restaurant. (Counterclaim ¶¶ 14, 18–22, 24). An August 2004 operating agreement indicated that Nahlawi would be the manager of both FWAH and the restaurant, but said nothing about the restaurant operating under any form of an intellectual property license. (*Id.* ¶ 16). In October 2006, Nahlawi circulated various documents to FWAH's shareholders, including a Licensing Agreement and a Management Agreement. (Counterclaim ¶ 26). These documents indicated that a company primarily owned by Nahlawi, known as Foodworks Management, Inc., was Fuego's general manager. (*Id.* ¶ 27). Although these documents indicated that they were approved by Defendant's shareholders on October 30, 2006 (*id.* Exs. F, G), they were never approved by a majority of members (*id.* ¶ 27). Instead, sometime after October 30, Nahlawi unilaterally executed the Licensing Agreement and Management Agreement as FWAH's manager, with-

---

[1] Additional background is laid out in the Court's August 14, 2012, December 3, 2012, July 1, 2013, and September 30, 2014 Orders. (Dkt. 94, 122, 152, 212).

out the requisite approval of FWAH's shareholders. (*Id.* ¶¶ 27–28). Thereafter, Nahlawi caused FWAH to make unauthorized, periodic payments to FUSA towards the Licensing Agreement. (*Id.* Count IX ¶¶ 34–35).

FWAH asserts that it is and always has been the owner of the Fuego logo and its derivatives, as well as common law trademark rights in the name Fuego Mexican Grill & Margarita Bar (collectively, the Fuego Marks). (Counterclaim, Count I ¶ 34). The FWAH members collectively developed and implemented the Fuego Marks and the associated restaurant design elements (Fuego Trade Dress). (*Id.* Count I ¶ 35, Count II ¶ 35). Nevertheless, FUSA licenses the Fuego Marks and Trade Dress to a third-party licensee in connection with the operation of another Mexican-themed restaurant. (*Id.* Count III ¶ 36). FUSA accepted periodic payments from its third-party licensee for its use of the Fuego Marks and Trade Dress. (*Id.* Count IX ¶ 36). The marks and trade dress currently being used by FUSA and its third-party licensee to promote its restaurant is identical or substantially similar to the Fuego Marks and Trade Dress developed by FWAH. (*Id.* Count III ¶ 38, Count IV ¶ 66). Thus, the Counterclaim alleges that FUSA has infringed, and continues to infringe, upon the Fuego Marks and Trade Dress despite FWAH's demand that such infringement cease. (*Id.* Count III ¶ 39, Count IV ¶ 67).

On December 20, 2004, despite having no right to do so, FUSA filed a trademark application with the USPTO (Application), seeking registration of the Fuego Marks. (Counterclaim, Count VII ¶¶ 34 & 38, Count VIII ¶¶ 34 & 38). On February 10, 2006, FUSA filed a Statement of Use representing that FUSA was using the Fuego

Logo in commerce as of November 14, 2005, the date the Fuego restaurant opened for business. (*Id.* Count VII ¶ 36, Count VIII ¶ 36). FUSA knew that the representations made in the Application and Statement of Use were materially and deliberately false. (*Id.* Count VII ¶¶ 38 & 40, Count VIII ¶¶ 38 & 40). On June 20, 2006, the USPTO registered the Fuego Marks. (*Id.* Count VII ¶ 37, Count VIII ¶ 37).

The Counterclaim contains nine causes of action: declaratory judgment, pursuant to 28 U.S.C. § 2201, that FWAH is and always has been the owner of the Fuego Marks and Trade Dress (Counts I and II); trademark and trade dress infringement and unfair competition in violation of Lanham Act § 43 (Counts III and IV); dilution of trademark and trade dress in violation of Lanham Act § 43 (Counts V and VI); cancellation of trademark registration, pursuant to Lanham Act § 14 (Count VII); fraudulent/false representation in violation of Lanham Act § 38 (Count VIII); and common law conversion (Count IX).

**B. Procedural History**

On July 1, 2013, the Court granted FWAH's Motion for Default Judgment and set this cause over for an evidentiary hearing as to the issue of damages. (Dkt. 152). The Court found that FUSA's continuing discovery violations and flaunting of Court-ordered deadlines warranted granting default judgment on FWAH's Counterclaim.[2] Specifically, the Court found that FUSA's discovery responses remained grossly deficient, FUSA's failures to adequately respond to discovery and comply

---

[2] On August 14, 2012, the Court had dismissed the Complaint as a sanction for FUSA's failure to prosecute. (Dkt. 94).

with Court orders demonstrated bad faith and fault, and default judgment was the appropriate Rule 37 sanction for FUSA's conduct.

On September 27, 2013, FWAH filed the current motion for judgment on damages. (Dkt. 166). FUSA filed a response on October 18, 2013. (Dkt. 173). The Court set an evidentiary hearing on the damages motion for November 6, 2013.[3] (Dkt. 176). FUSA's new counsel filed a supplemental response on December 2, 2013. (Dkt. 186). On December 13, 2013, after the parties advised that they were discussing global settlement of all pending federal and state cases, the Court entered and continued the motion for damages. (Dkt. 192). After the settlement discussions proved unsuccessful, the parties informed the Court that all damages evidence would be included in their papers and a hearing was not necessary. (Dkt. 215). FWAH filed a reply on October 20, 2014 (Dkt. 216), and FUSA filed a sur-reply on October 23, 2014 (Dkt. 220).

FWAH's Motion seeks: (1) a declaration that FWAH is the sole owner of the Fuego Marks and Trade Dress, FUSA has no ownership rights in the Fuego Marks and Trade Dress, and all license agreements executed by FUSA regarding the Fuego Marks and Trade Dress are void; (2) a permanent injunction against FUSA and anyone acting in concert with FUSA from using the Fuego Marks and Trade Dress in any manner; (3) actual damages for trademark infringement; (4) disgorged profits

---

[3] On November 5, 2013, Plaintiff's counsel filed a motion to withdraw as attorney after being notified by FUSA that his representation was terminated. (Dkt. 177). After new counsel filed an appearance (Dkt. 184), the Court allowed former counsel to withdraw (Dkt. 190).

for trademark and trade dress infringement; (5) treble damages for trademark and trade dress infringement; (6) prejudgment interest; and (7) attorney's fees.

## II. ANALYSIS

### A. Relevant Legal Standard

The default judgment establishes, as a matter of law, that FUSA is liable to FWAH on each cause of action properly alleged in the Counterclaim. *e360 Insight v. The Spamhouse Project*, 500 F.3d 594, 602 (7th Cir. 2007); *accord Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). In addition, because "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the Counterclaim "provides a ceiling for available remedies," *Am. Taxi*, 582 F. Supp. 2d at 1004. Thus, while "the well-pled allegations of the complaint relating to liability are taken as true, [] those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *see* Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2688, at 58–59 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Accordingly, FUSA is liable only for those damages that arise from the acts and injuries properly pleaded in the Counterclaim. *Wehrs*, 688 F.3d at 892 (citation omitted); see *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) ("The outer bounds of the recovery allowable are of course measured by the

principle of proximate cause. The default judgment did not give TWA a blank check to recover from Toolco any losses it had ever suffered from whatever source.").

As discussed below, it does not appear that either party has thought about these threshold issues. Without discussing how the allegations in the Counterclaim establish each element of its claims, FWAH merely asserts that because the factual allegations are presumed true, it is entitled to damages. FUSA, on the other hand, argues the merits of its case, failing to appreciate that the default judgment establishes, as a matter of law, that the factual allegations in the Counterclaim are presumed true.

**B. Fraudulent/False Representation**

Count VIII for fraudulent/false representation, in violation of Lanham Act § 38, asserts that FUSA made materially false representations to the USPTO, deceiving the USPTO into granting registration of the Fuego Marks to FUSA. (Counterclaim, Count VIII ¶¶ 34, 36, 38, 41). Section 38 provides that

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. FWAH seeks damages "(a) related to the application itself, which has been rendered moot,[4] and (b) the costs and attorneys' fees incurred by FWAH in

---

[4] Count VII seeks cancellation of FUSA's registration of the Fuego Marks. On January 25, 2013, the registration was cancelled by the USPTO due to failure to maintain the trademark registration. (Dkt. 166 at 7 & Ex. C). FWAH acknowledges that relief under this count has been mooted. (*Id.* 7). Count VII is dismissed.

bringing the claim against FUSA." (Dkt. 166 at 7). But attorney fees are not recoverable for a Lanham Act § 38 violation. *See Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 550 (7th Cir. 1982) (observing that § 35 is the proper source for seeking fees); *see United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) (section § 38 "does not allow for the award of attorney fees"); *Zobmondo Entm't LLC v. Falls Media LLC*, No. 06 CV 3459, 2008 WL 6138835, at *11 (C.D. Cal. Aug. 11, 2008) ("attorney's fees are not properly a part of damages under section 38 of the Lanham Act"); *High Volatage Beverages, LLC v. Coca-Cola Co.*, No. 08 CV 0367, 2011 WL 831523, at *6 (W.D.N.C. Mar. 3, 2011) ("Indeed, virtually every modern court has held that, as a matter of law, attorneys' fees do not qualify as recoverable 'damages' under Section 38 of the Lanham Act."). Accordingly, no damages will be awarded under Count VIII.

**C. Declaratory Relief**

In Counts I and II of the Counterclaim, FWAH seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it is the rightful owner of the Fuego Marks and Trade Dress and that FUSA has no right to license the Fuego Marks and Trade Dress. (Counterclaim, Count I ¶¶ 40–41, Count II at 39–40). The Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party seeking such declaration," provided that the case presents an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); *accord Loufrani v.*

---

FWAH also is not seeking damages for its dilution claims, Counts V and VI, electing not to retain an expert to opine regarding the damages caused by dilution. (Dkt 166 at 7). Thus, no damages will be awarded under Counts V and VI.

*Wal-Mart Stores, Inc.*, No. 09 C 3062, 2009 WL 3787941, at *3 (N.D. Ill. Nov. 12, 2009). Thus, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

The § 38 fraud claim provides FWAH with standing to sue under the Lanham Act. *See* 6 *McCarthy on Trademarks and Unfair Competition* § 31:85 (4th ed.). And the facts alleged in the Counterclaim establish the existence of an actual controversy. While FWAH is the lawful owner of the Fuego Marks and Trade Dress, FUSA has used the Fuego Marks and Trade Dress and licensed them without authority to third parties. (Counterclaim, Count I ¶¶ 34–35, Count II ¶ 35, Count III ¶¶ 36–39, Count IV ¶¶ 66–69, Count IX ¶ 36). Moreover, Accordingly, the Court declares, pursuant to 28 U.S.C. § 2201, that (1) FWAH is the rightful and sole owner of the Fuego Marks and Trade Dress; (2) FUSA has no ownership rights in the Fuego Marks and Trade Dress; (3) the License Agreement between FUSA and FWAH is void *ab initio* and held for naught; and (4) all other license agreements between FUSA and any third party regarding the Fuego Marks and Trade Dress are void *ab initio* and held for naught.

**D. Infringement**

In Counts III and IV, FWAH asserts that FUSA infringed on the Fuego Marks and Trade Dress in violation of Lanham Act § 43, 15 U.S.C. § 1125(a). FWAH seeks money damages, injunctive relief, and attorney's fees. To state a § 43 claim, FWAH must allege that FUSA used the infringing trademarks or trade dress in interstate commerce. 15 U.S.C. § 1125(a)(1); *see Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 578 F. App'x 959, 962 (11th Cir. 2014) (In order to bring a claim under § 43(a), "Plaintiffs must allege that misleading representations of goods or services were 'used in commerce.'") (affirming district court's dismissal of § 43(a) infringement claim); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) ("Plaintiff must allege that infringing goods or services 'travelled in interstate commerce.'"); *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (To state a claim under § 43(a), the party must allege, inter alia, that "defendant's [infringing] products traveled in interstate commerce."). In fact, "[f]ederal court jurisdiction under the Lanham Act extends only to cases in which a trademark has been used in interstate commerce." *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1276 (S.D. Fla. 2008). Thus, "[a] claim under section 1125(a) shall be dismissed for failure to allege that the act of infringement affects interstate commerce." *Sweet v. City of Chicago*, 953 F. Supp. 225, 230 (N.D. Ill. 1996); *accord Idling v. Anaston*, 266 F. Supp. 1015, 1018 (N.D. Ill. 1967) ("The interstate com-

merce requirement in § 43(a) is of such importance that failure to allege this element is, of itself, cause for dismissal for failure to state a claim.").

While the Counterclaim asserts that *FWAH* used the Fuego Marks and Trade Dress "in commerce" (Counterclaim, Count I ¶ 35, Count II ¶ 35), the Counterclaim contains no allegations that *FUSA* used the Fuego Marks or Trade Dress in interstate commerce. On the contrary, the Counterclaim alleges that FUSA *falsely* represented to the USPTO that FUSA was using the Fuego Mark in commerce. (*Id.* Count VII ¶¶ 36, 38, Count VIII ¶¶ 36, 38). Thus, the Counterclaim does not properly allege a claim for trademark or trade dress infringement.[5]

The Court will give FWAH a limited opportunity to prove-up the "in commerce" element. Accordingly, the Court reserves its ruling on whether damages, including any injunctive relief, will awarded for Counts III and IV.

**E. Conversion**

Count IX for common law conversion asserts that FUSA wrongfully accepted and retained periodic payments from FWAH and third party licensees for their use of the Fuego Marks. (Counterclaim, Count IX ¶¶ 34, 36, 37). But the law is clear that there is no common law cause of action for conversion of trademark. *See Richmond ex rel. Liberty Inst. Trust v. Nat'l Inst. of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at *7 (N.D. Ill. Aug. 15, 2006) (dismissing Plaintiff's claim that Defendant's infringement of Plaintiff's trademark constituted the state law torts of

---

[5] Although FWAH is not seeking damages for its dilution claims in Counts V and VI, they also fail to properly allege the "in commerce" element. *See* 15 U.S.C. § 1125(c).

conversion and trespass to chattel). Indeed, as a leading treatise found, "[e]very court to consider such a claim has rejected it." 4 *McCarthy on Trademarks and Unfair Competition* § 25:9.50 (4th ed.) ("Courts that have been faced with a claim that a trademark has been 'converted' have rejected the claim outright."). As the *Richmond* court concluded, FWAH's

> proposed combination of federal trademark law and Illinois law governing conversion and chattel just doesn't work when the chattel at issue is a federal trademark. A trademark exists solely because a federal statute memorialized an idea and thereby transformed it into intellectual property protected by federal law. In contrast, property that is typically the subject of a conversion or trespass to chattel action, whether tangible or intangible, exists independently *(e.g.,* a house, a satellite signal, a customer list, etc.).

2206 WL 2375454, at *7. Accordingly, Count IX is dismissed, and no damages will be awarded.

### III. CONCLUSION

For the reasons stated above, Foodworks of Arlington Heights's Motion For Judgment on Damages [166] is **GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART**. Counts VII and IX are dismissed with prejudice. No damages are awarded for Counts V, VI, and VIII. The Court declares, pursuant to 28 U.S.C. § 2201, that (1) FWAH is the rightful and sole owner of the Fuego Marks and Trade Dress; (2) FUSA has no ownership rights in the Fuego Marks and Trade Dress; (3) the License Agreement between FUSA and FWAH is void *ab initio* and held for naught; and (4) all other license agreements between FUSA and any third party regarding the Fuego Marks and Trade Dress are void *ab initio* and held for

naught. The Court reserves ruling on whether FWAH is entitled to any additional damages for Counts III and IV.

E N T E R:

Dated: November 24, 2014

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge