UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FOODWORKS USA, INC.,

    Plaintiff/Counter-Defendant,

v.

FOODWORKS OF ARLINGTON HEIGHTS, LLC,

    Defendant/Counter-Plaintiff.

No. 10 CV 1020

Magistrate Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Defendant/Counter-Plaintiff Foodworks of Arlington Heights (FWAH) requests that the Court reconsider portions of its November 24, 2014 Opinion denying in part FWAH's motion for judgment on damages.[1] (Dkt. 228). For the reasons stated below, the request is denied.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been

---

[1] The motion also provided further briefing on the issues reserved by the Court in its November 24, 2014 Opinion, which the Court addresses in a separate opinion.

heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see Keene Corp.*, 561 F. Supp. at 665 ("Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion."). "A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Ahmed*, 388 F.3d at 249 ("It's as if the movant, when he appealed, had filed two copies of his appeal brief, and when his appeal was rejected he asked us to read the second copy.").

## A. Conversion

In Count IX of the Counterclaim (common law conversion), FWAH asserts that Plaintiff/Counter-Defendant Foodworks USA (FUSA) wrongfully accepted and retained periodic payments from FWAH and third party licensees for their use of the Fuego Logo and its derivatives (Fuego Marks). (Counterclaim, Count IX ¶¶ 34, 36, 37). The Court ruled that there is no common law cause of action for conversion of trademark. (Dkt. 224 at 11–12). In its motion for reconsideration, FWAH argues that "any and all license fees collected by FUSA under the License Agreement or third-party license agreement(s) were the property of FWAH." (Dkt. 228 at ¶ 6). Thus, FWAH contends that Count IX does not seek damages for conversion of a trademark; rather, Count IX seeks damage for conversion of license fees. (*Id.* at ¶¶ 5–6). But this is a distinction without a difference.

To state a claim for conversion under Illinois law, FWAH must allege that it has a right to the tangible property at issue, it has an absolute and unconditional right to immediately possess that property, it made a demand for possession, and FUSA wrongfully and without authorization assumed control, dominion, or ownership over that property. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); *accord Richmond ex rel. Liberty Inst. Trust v. Nat'l Inst. of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at *6 (N.D. Ill. Aug. 15, 2006). FWAH's conversion claim "must be an identifiable piece of property of which [FWAH] was wrongfully deprived." *In re Thebus*, 483 N.E.2d 1258, 1260 (1985). "Because of this requirement, Illinois law limits the situations where a plaintiff may maintain an action for the conversion of money." *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 967 (N.D. Ill. 2002). An asserted right to fees normally will not support a claim for conversion. "Only if the money at issue can be described as 'specific chattel,'—in other words, 'a specific fund or specific money in coin or bills,'—will conversion lie." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 483 N.E.2d at 1260, and *Mid–America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984)).

The Counterclaim alleges that FUSA fraudulently licensed the Fuego Marks through a License Agreement with FWAH as well as license agreements with other entities. (Counterclaim, ¶¶ 24, 26, 28, Count I at ¶ 41 ("FUSA had no ownership rights in the Fuego Logo to license to FWAH or any other entity"), Count III at ¶ 36 ("FUSA currently licenses the [Fuego Marks] to a third-party licensee"), Count IX at

¶ 34 ("Nahlawi caused FWAH to make periodic payments to FUSA toward the Licensing Agreement"), *id.* at ¶ 36 ("FUSA accepted periodic payment from its third-party licensees for the use of the [Fuego Marks]"); *see also id.* Ex. F (License Agreement between FUSA and FWAH for use of the Fuego Marks)). Count IX, the conversion count, further asserts that FWAH "has an absolute and unconditional right to use the Fuego Logo, and has an absolute and unconditional right to the monies paid to FUSA by [FWAH] as well as the third party licensees for the use of the Fuego Logo." (Counterclaim, Count IX at ¶ 37). Thus, the "property" that FUSA is alleged to have wrongfully assumed ownership of through the license agreements is the Fuego Marks. The license fees do not exist without the trademark agreements. FWAH could not assert any rights to the fees themselves without alleging that FUSA had no right to license the Fuego Marks. Indeed, the license fees are merely the damages that FWAH seeks to recover for FUSA's fraudulent Fuego Marks licenses.

FWAH's conversion claim, which is wholly premised on recovering fees from the conversion of the Fuego Marks, is not cognizable by Illinois law. *See Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 793 (N.D. Ill. 1997) (An identifiable object of property must be the subject of conversion) (citation omitted). As fully discussed in the Court's Opinion (Dkt. 224 at 11–12), a conversion claim "just doesn't work when the [property] at issue is a federal trademark." *Richmond*, 2006 WL 2375454, at *7. In *Richmond*, the plaintiff asserted a conversion claim in order to recover "damages, including without limitation, the loss of sales and profits that plaintiff would have

made but for [defendant's] act, preventing plaintiff from exercising its exclusive rights to use the [] mark in commerce." *Richmond*, No. 06 C 1032 (Complaint ¶ 99, filed Feb. 24, 2006). The court rejected Richmond's argument that the defendant's use of his trademark stated a colorable conversion claim. *Richmond*, 2006 WL 2375454, at *7.

In a similar case, the district court concluded that a state law conversion claim could not be used to recover fraudulently received trademark license fees. *In re Signature Apparel Group*, No. 09-15378, 2015 WL 1009452, at *1–2, *13–14 (Bankr. S.D.N.Y. March 4, 2015). In *Signature Apparel*, the debtor entered into trademark license agreement with the defendant. *Id.* at *1–2. The defendant is alleged to have falsely represented that the license agreement was terminated prior to the debtor going into bankruptcy. *Id.* at *1. The plaintiff filed suit alleging that the defendant received millions of dollars in value to which the debtor was entitled, asserting various claims including that the defendant wrongfully converted the debtor's rights to the license. *Id.* at *5. The court found that under New York law, the conversion claim fails because the license agreement was not tangible property. *Id.* at *13–14; *see also Spiegel v. Quality Bakers of Am. Co-Op, Inc.*, 1992 WL 349799, at *2–3, *7) (claim for conversion of trademark license fees fails as a matter of law).

Like *Richmond* and *Signature Apparel*, FWAH seeks to recover license fees collected by FUSA for fraudulently claiming that it owned the Fuego Marks. (Counterclaim, Count IX). But as the *Richmond* and *Signature Apparel* courts concluded, a trademark and the fees collected for licensing it are intangible property, which can-

not be subject to a conversion claim. *Richmond*, 2006 WL 2375454, at *7; *Signature Apparel*, 2015 WL 1009452, at *14; *see also Horbach*, 288 F.3d at 978 ("Only if the money at issue can be described as [tangible property] . . . will conversion lie."). As the *Richmond* court observed, FWAH's conversion claim is "in fact, just a different and unnecessary restatement of [its] federal trademark infringement claim." 2006 WL 2375454, at *7; (*compare* Counterclaim, Counts III and IV (seeking recovery of the money made from FUSA's fraudulent use of the Fuego Marks), *with id.* Count IX (same)). Because trademarks are creatures of *federal* law, using *state* conversion law "is the wrong tool for the job." *Richmond*, 2006 WL 2375454, at *7 (citation omitted); *see Ringling Bros.-Barnum & Bailey Combined Shows v. Celozzi-Ettelson Chevrolet, Inc.*, 855 F.2d 480, 483 (7th Cir. 1988) (observing that the Lanham Act preempts similar state statutes). Indeed, "[w]ere such a claim of 'conversion' viable, it would mean that the tort of conversion could largely displace the [federal] IP laws traditionally defining what is an infringement of patents, trademarks and copyrights." 4 *McCarthy on Trademarks and Unfair Competition* § 25:9.50 (4th ed.). Which is why "[c]ourts that have been faced with a claim that a trademark has been 'converted' have rejected the concept outright." *Id.*

## B. Fraudulent/False Representation

In Count VIII of the Counterclaim, FWAH asserts that in violation of Lanham Act § 38, FUSA made materially false representations to the USPTO, deceiving the USPTO into granting registration of the Fuego Marks to FUSA. (Counterclaim, Count VIII at ¶¶ 34, 36, 38, 41). In its motion for judgment on damages, FWAH re-

quested damages "(a) related to the application itself, which has been rendered moot, and (b) the costs and attorneys' fees incurred by FWAH in bringing the claim against FUSA, which are subsumed in the other counts above." (Dkt. 166 at 7). The Court awarded no damages under Count VIII, ruling that attorney fees are not recoverable for a § 38 violation. (Dkt. 224 at 7–8). In its motion for reconsideration, FWAH argues that it is entitled to "actual damages," which include "the license fees that FWAH paid to FUSA when FUSA had no rightful claim to the license fees." (Dkt. 228 at ¶¶ 10, 12). But FWAH did not request "actual damages" for Count VIII in its motion for judgment on damages, and it is simply too late to do so now. *See Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion.").

Even if FWAH's damage motion had timely requested license fees for FUSA's § 38 violation, the fees would not have been allowed. "The damages allegedly incurred as a result of the [§ 38] fraud must be clearly articulated." 6 *McCarthy on Trademarks and Unfair Competition* § 31:85 (4th ed.); *see Jackson v. Lynley Designs, Inc.*, 729 F. Supp. 498, 500 (E.D. La. 1990). The Counterclaim merely requests "an amount equal to the damages incurred by FWAH from FUSA's false representation." (Counterclaim, Count VIII). Further, the Counterclaim does not allege how the fraudulent trademark registration *caused* FWAH or the third parties to enter into licensing agreements with FUSA. *See Zobmondo Entm't LLC v. Falls Media LLC*, No. CV 06-3459, 2008 WL 6138835, at *9 (C.D. Cal. Aug. 11, 2008) (fraudulent

application "could not have caused cognizable injury under section 38 based upon the three deals that predated [the] registration"); *see also* 6 *McCarthy on Trademarks and Unfair Competition* § 31:85 (4th ed.) ("Evidence of injury or damages caused by a registration procured by allegedly fraudulent representations must be more than merely speculative."). Indeed, the Counterclaim asserts that FWAH was not aware that FUSA had filed a trademark application. (Counterclaim, Count VIII at ¶ 34). And while the Licensing Agreement references the trademark application (*id.* Ex. F), the Counterclaim asserts that the Licensing Agreement itself was entered into without any authorization by FWAH (*id.* ¶ 32).

## C. Conclusion

In sum, FWAH has offered the Court no reason to reconsider its prior rulings. Defendant/Counter-Plaintiff's Motion to Reconsider the Court's November 24, 2014 Order [228] is **DENIED**.

E N T E R:

Dated: March 19, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge